IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

_____

| | |
|---|---|
| MATTHEW LYNN MONTGOMERY,<br><br>Petitioner,<br><br>vs.<br><br>MARTIN FRINK, Warden, Crossroads Correctional Center; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>Respondents. | Cause No.  CV 11-120-M-DWM-JCL<br>              CV 11-121-M-DWM-JCL<br><br><br>FINDINGS AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE |

_____

On September 2, 2011, Petitioner Matthew Montgomery filed this action for writ of habeas corpus under 28 U.S.C. § 2254. Montgomery is a state prisoner proceeding pro se.

On September 7, 2011, Montgomery was ordered to show cause why his petition should not be dismissed with prejudice as time-barred or procedurally barred. He responded on November 4, 2011.

1

# I. Background

In 2003, Montgomery was charged in Cause No. DC-03-98, Montana Twenty-First Judicial District Court, Ravalli County, with incest, sexual intercourse without consent, and theft. He entered into a plea agreement with the State, pleading no-contest to incest in exchange for dismissal of the other two charges. He was sentenced to serve twenty years, with all but one year suspended. *State v. Montgomery*, 239 P.3d 929, 930 ¶ 3 (Mont. 2010).

In 2006, Montgomery was charged in Cause No. DC-06-83, Montana Twenty-First Judicial District Court, Ravalli County, with three counts of sexual assault, three counts of sexual abuse of a child, and one count of evidence-tampering. Again, Montgomery entered into a plea agreement with the State. He pled guilty to two counts of sexual assault in exchange for dismissal of the other charges and the State's agreement not to seek to have him sentenced as a persistent felony offender. Montgomery also admitted violating the conditions of his 2003 suspended sentence. He was sentenced to serve twenty years on each of the two sexual assault convictions, with ten years suspended on each, and twenty years on the revoked 2003 sentence, with ten years suspended. All sentences were to run consecutively, for a total term of thirty years in prison. *Id.* at 930-31 ¶ 4.

On October 7, 2008, Montgomery moved to withdraw his no-contest and guilty

pleas. Counsel was appointed. After a hearing, the trial court rejected Montgomery's motions to withdraw his pleas.

Montgomery, still represented by counsel, appealed. On August 31, 2010, the Montana Supreme Court held that Montgomery's motions to withdraw his pleas were time-barred under the one-year limitations period of Mont. Code Ann. § 46-16-105(2) (2003).[1] *Montgomery*, 239 P.3d at 934 ¶ 19.

A little over a month later, Montgomery, acting pro se, filed a petition for writ of habeas corpus in the Montana Supreme Court, claiming that his 2003 conviction was invalid on its face because Mont. Code Ann. § 46-12-204(4) prohibits pleas of nolo contendere in sex offense cases, including incest. He relied on *Lott v. State*, 150 P.3d 337, 342 ¶ 22 (Mont. 2007), to excuse the untimely filing of his motion to withdraw his pleas. He also asserted that his sentences on the 2007 convictions were invalid because they rested, in part, on his 2003 conviction. Pet. at 1-3, *Montgomery v. Law*, No. OP 10-0489 (Mont. filed Oct. 5, 2010), *available at* http://supremecourtdocket.mt.gov (accessed Sept. 6, 2011).

The Montana Supreme Court held that Montgomery could have raised his issue on direct appeal but failed to do so. Order at 2, *Montgomery*, No. OP 10-0489 (Mont.

---

[1] The time bar applies only to pleas entered after July 1, 2003. 2003 Mont. Laws ch. 346 § 3. On appeal, the Montana Supreme Court noted, "The parties agree that the amendment applies to Montgomery's pleas and that his request to withdraw them was not filed within one year after the judgments became final." *Montgomery*, 239 P.3d at 933 ¶ 14.

3

Dec. 7, 2010). It also said:

> Montgomery benefitted from the plea agreement by receiving a suspended sentence for a felony offense. He could have appealed but elected not to do so and instead accepted the benefit of his bargain. As we concluded in *Hardin*, he is now barred from challenging the long ago plea.

*Id.* (citing *Hardin v. State*, 146 P.3d 746, 750 ¶ 15 (Mont. 2006) (characterizing claim that trial court lacked jurisdiction to accept nolo contendere plea as "confusing statutory error with the power or capacity of the court to accept a plea or impose a sentence")). Montgomery's state petition for writ of habeas corpus was denied on December 7, 2010.

Montgomery filed his federal petition on September 2, 2011.

## II. Allegations

Montgomery alleges, first, that his convictions for sexual assault in Cause No. DC-06-83 were contingent on his incest conviction and, second, that his incest conviction in Cause No. DC-03-98 was based on an illegal nolo-contendere plea. Pet. (doc. 1) at 4. He also alleges, third, that his first conviction violated equal protection, either because he was convicted in violation of the statute or because only he was prosecuted for incest, while his sister, who was older and "the aggressor and main inst[i]gator" was not, *id.* at 5; fourth, that Mont. Code Ann. §§ 45-5-502 and -503 are unconstitutional because they contain the word "and," Pet. at 5; fifth, that he was not

4

read his *Miranda* rights before his psychological evaluations, *id.* at 8; sixth, that the Federal Rules of Criminal Procedure were not followed, *id.*; seventh, that the first offense was a lesser included offense of the second, *id.* at 8-9; eighth, that the State took advantage of its own wrong by permitting him to plead nolo contendere to incest, *id.* at 9; and ninth, that the Montana Supreme Court violated his federal right to due process by refusing to grant him habeas relief, *id.* at 3, 9-10.

### III. Analysis

All of Montgomery's claims in his federal petition concern the legitimacy of his convictions and sentences in cases finalized several years ago.

**A. Procedural Default**[2]

Montgomery was ordered to show cause why his petition was not time-barred. Because the procedural bar appears to be more straightforward, only it is addressed here. No findings or recommendation are made with respect to the time bar.

A federal habeas court generally will not hear claims denied in state court for petitioner's failure to comply with a firmly established and consistently applied state

---

[2] The Court appreciates the general wisdom of Montgomery's suggestion that the person who is without sin should cast the first stone. Resp. to Order (doc. 10) at 1 (quoting John 8:17)). But sin is not a factor in a court of law. This Court's job is to apply the law as defined and developed by Congress and by courts higher than this one. The law is the law; if Montgomery were represented by counsel, *see* Resp. to Order at 1, that lawyer would have to find some way of dealing with the law that is applied here. If it appeared the law might not apply, then the Court would not apply it. And if the Court is wrong, error, unlike sin, can be corrected on appeal.

5

procedural requirement, *Collier v. Bayer*, 408 F.3d 1279, 1284 (9th Cir. 2005), so long as the requirement does not depend on the merits of his federal claims, *Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985).

In his state habeas petition, Montgomery alleged that his second conviction in Cause No. DC-06-83 was contingent on his first conviction and, second, that his first conviction in Cause No. DC-03-98 was based on an illegal nolo-contendere plea and that he was entitled as a matter of federal due process to withdraw the illegal plea. His eighth and ninth claims could be understood to be encompassed within this claim. Because he did not present Claims 3 through 7, those claims are procedurally defaulted. *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) (en banc).

Montgomery was therefore ordered to show cause why the claims he did not raise in state court should not be dismissed with prejudice as procedurally barred in federal court. He was advised that he could do so in one or both of the following ways:

1. He might show a legitimate excuse for his default, for instance, that "'some objective factor external to the defense'" prevented him from raising his claims in state court. *Cook v. Schriro*, 538 F.3d 1000, 1027 (9th Cir. 2008) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). The "prejudice" prong is met if Montgomery can show that each error he alleges was serious enough to undermine confidence in the

outcome of the proceeding. *Smith*, 510 F.3d at 1148 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

2. He might "show that, in light of all the evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt." *Smith*, 510 F.3d at 1140. This likelihood must be shown "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Schlup v. Delo*, 513 U.S. 298, 328 (1995).

Montgomery does not attempt to make a showing under the *Schlup* test. In his direct appeal from the trial court's denial of his motions to withdraw his guilty pleas, Montgomery argued that "his withdrawal request falls within the exception . . . as a 'claim of innocence . . . supported by evidence of a fundamental miscarriage of justice.'" *Montgomery*, 239 P.3d at 933 ¶ 15 (quoting Mont. Code Ann. § 46-16-105(2)) (second ellipsis in original). But his evidence consisted of "a one-line, self-serving, unresponsive comment within his hearing testimony asserting 'I'm innocent of these charges,'" and he "offered nothing to deflect the evidence provided by multiple victims, described by his original trial counsel as 'very, very compelling,' the corroborative DNA evidence about which his trial counsel testified, or to

demonstrate that any of the pleas he entered to multiple charges over multiple years are conceivably suspect." *Id.* at 934 ¶ 18. This evidence would, of course, also be insufficient under the *Schlup* test.

As for cause, Montgomery states that counsel "promise[d] to file for an Appeal knowing that (he's never really going to do any of that because) the Statute of limitations will soon run out and there's nothing the Petitioner can do about it because the only one [who] knows the law is the Court appointed counsel." Resp. to Order at 5 (parentheses in original). In the context of Montgomery's proceedings in state court, this failure to pursue an appeal could only refer to direct appeal of his convictions. But he could have presented whatever error arose at those points in timely petitions for postconviction relief. Mont. Code Ann. §§ 46-21-101(1), -102(1). And Montgomery did not allege in any of his proceedings in state court that his appointed lawyers were constitutionally ineffective because they failed to pursue direct appeal. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) ("Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution."). Neither in his direct appeal from the trial court's denial of his motion to withdraw his guilty pleas, nor even when Montgomery himself filed his state habeas petition pro se, did he tell the Montana Supreme Court that appointed counsel "promise[d] to file for an Appeal" but failed to do so. No

8

procedural avenue remains available to him in state court now. *E.g.*, Mont. Code Ann. §§ 46-21-105(1)(b), -22-101; *State v. Root*, 64 P.3d 1035, 1037-38 ¶¶ 16-18 (Mont. 2003). Consequently, the proffered cause is itself procedurally defaulted. *Id.* at 452-54.

In addition, Montgomery's response to the Order to Show Cause fails to demonstrate that he suffered any prejudice as a result of the non-prosecution of his sister, because even if she had been prosecuted, he could have been prosecuted as well. He makes no showing with respect to the alleged *Miranda* violation or the lesser-included-offense claim. Nor does he show prejudice sufficient to undermine confidence in the outcome of the proceeding with respect to his other claims; statutes containing more than one element are not unconstitutional, and the Federal Rules of Criminal Procedure do not apply in the state courts. His petition, likewise, does not show prejudice.

Claims 3 through 7 are defaulted. Because Montgomery has not shown a legally valid excuse for his default, those claims are procedurally barred and cannot be heard on the merits in federal court. They should be dismissed with prejudice.

**B. Merits**

Montgomery alleges, as he did in his state habeas petition, that his second conviction in Cause No. DC-06-83 was contingent on his first conviction; and, second,

9

that his first conviction in Cause No. DC-03-98 was based on an illegal nolo-contendere plea and that he was entitled as a matter of federal due process to withdraw the illegal plea. If, as he alleges, his first conviction was invalid, then, he argues, his second is invalid as well.

But Montgomery alleges that his convictions are invalid under *state* law. Pet. (doc. 1) at 4 (citing Mont. Code Ann. § 46-12-204(4)). That does not make them invalid under federal law. "[O]nly noncompliance with *federal* law . . . renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, __ U.S. __, 131 S. Ct. 13, 16 (2010) (per curiam); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). There is no federal constitutional prohibition against nolo contendere pleas in sex offense cases.

Further, the Montana Supreme Court is the highest authority in the land, bar none, on the interpretation of Montana law. Neither this Court nor the United States Supreme Court may question it. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today we reemphasize that it is not the province of a federal habeas court to reexamine state court determinations on state law questions."); *Wisconsin v. Mitchell*, 508 U.S. 476, 483 (1993) ("There is no doubt that we are bound by a state court's construction of a state statute."). And the Montana Supreme Court held that

Montgomery's 2003 conviction for incest was not rendered invalid by his nolo-contendere plea. Neither this Court nor any other federal court can revisit the Montana Supreme Court's determination of a point of Montana state law.

Montgomery relies on *Hicks v. Oklahoma*, 447 U.S. 343 (1984). In *Hicks*, the Oklahoma Court of Criminal Appeals acknowledged that the petitioner's sentence was unconstitutional under state law, but it declined to award relief because the sentence he received was within the maximum the jury could have imposed if the procedure had been constitutional under state law. The United States Supreme Court held that "Oklahoma denied the petitioner the jury sentence to which he was entitled under state law, simply on the frail conjecture that a jury *might* have imposed a sentence equally as harsh." Thus, the court violated the petitioner's federal right to due process. *Id.* at 346.

Here, the Montana Supreme Court did not agree with Montgomery that his conviction or sentence were unlawful under state law. That determination was entirely its own, just as, in *Hicks*, the initial question of whether the petitioner's sentence did or did not comply with state law was entirely up to the Oklahoma court. Therefore, *Hicks* does not help Montgomery. The State committed no "wrong," the Montana Supreme Court was not required to grant Montgomery's petition, and Montgomery's first two claims fail to state any claim on which relief could be granted.

Because the two claims that Montgomery did exhaust present only issues of state law, federal habeas relief is not available. These claims, too, should be dismissed with prejudice.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Lambright v. Stewart*, 220 F.3d 1022, 1026 (9th Cir. 2000) (quoting *Slack*, 529 U.S. at 484).

The claims that Montgomery calls the "two major questions" he presents are matters of state law, not federal law. The Montana Supreme Court rejected Montgomery's interpretation of the meaning of Montana law, and a federal court

12

cannot alter that result. Claims 1, 2, 8, and 9 present no federal issue. A COA is not warranted as to them.

Claims 3-7 are procedural defaulted, and the default is unexcused. In his response to the Order to Show Cause, Montgomery did not assert actual innocence, though he was advised of that excuse. The only cause he asserts was itself defaulted in state court and, at any rate, Montgomery fails to show prejudice sufficient to undermine confidence in the outcome.

There is no reason to encourage further proceedings. A COA is not warranted.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. The Petition (doc. 1) should be DISMISSED WITH PREJUDICE.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Montgomery may serve and file written objections to this Findings and Recommendation within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. If Montgomery files

objections, he must itemize each factual finding to which objection is made and must identify the evidence in the record he relies on to contradict that finding; and he must itemize each recommendation to which objection is made and must set forth the authority he relies on to contradict that recommendation.  Failure to assert a relevant fact or argument in objection to this Findings and Recommendation may preclude Montgomery from relying on that fact or argument at a later stage of the proceeding. A district judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Montgomery must immediately inform the Court of any change in his mailing address</u> by filing a "Notice of Change of Address."

DATED this 23rd day of December, 2011.

                                               /s/ Jeremiah C. Lynch
                                              Jeremiah C. Lynch
                                              United States Magistrate Judge